IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TIMOTHY A. GEORGE,                          *
                                            *
        Plaintiff,                          *
                                            *
vs.                                         *        CIVIL ACTION 10-00113-B
                                            *
MICHAEL J. ASTRUE,                          *
Commissioner of Social                      *
Security,                                   *
                                            *
        Defendant.                          *

## ORDER

Plaintiff Timothy A. George ("Plaintiff" or "George") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., and 1381 et seq. On October 15, 2010, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 17). Thus, this case was referred to the undersigned to conduct all proceedings and order to entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. (Doc. 18). Oral argument was held on December 15, 2010. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I.   **Procedural History**

Plaintiff protectively filed an application for supplemental security income benefits on May 11, 2007.[1] In his application, Plaintiff alleges disability since April 15, 2006, due to left radial mononeuropathy and carpal tunnel syndrome on the left. (Tr. 53, 101, 148, 153). Plaintiff's application was denied, and he timely filed a Request for Hearing (Tr. 77-85). On February 26, 2009, Administrative Law Judge David R. Murchison (hereinafter "ALJ") held an administrative hearing, which was attended by Plaintiff, his attorney, and vocational expert (hereinafter "VE") Sue Berthaume. (Tr. 44-68). A supplemental administrative hearing was held on August 6, 2009. In attendance at this subsequent hearing were Plaintiff, his attorney, and VE Gail Jarrell. (Tr. 19-43). On September 14, 2009, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 10-18). Plaintiff's request for review was denied by the Appeals Council ("AC") on January 28, 2010. (Id. at 1-4). The ALJ's decision became the final decision of the Commissioner in accordance with 20 C.F.R. § 404.981. The parties agree that this case is now ripe for

---

[1] Plaintiff's initial application for supplemental security income, filed on June 6, 2006, was denied (Tr. 71-76, 136).

judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   Issues on Appeal

A.   Whether the ALJ erred in finding that Plaintiff can perform the jobs of light semi-skilled companion and light unskilled children's attendant because the Dictionary of Occupational Titles ("DOT") descriptions for these positions are at odds with Plaintiff's residual functional capacity ("RFC")?

B.   Whether the ALJ erred by not performing a "function by function" analysis of Plaintiff's limitations in violation of Social Security Ruling 96-8p?

C.   Whether the ALJ erred by failing to assign controlling weight to the opinions of Plaintiff's treating physician?

## III. Factual Background

Plaintiff was born on September 16, 1960, and was 48 years old at the time of both administrative hearings. (Tr. 69-70, 139).   Plaintiff testified that he has a 12th grade education, and that he attended a school that provided "special help." (Id. at 30, 206-07). He has previous work experience unloading trucks and stocking merchandise, taking inventory, stripping paint, and performing landscaping. (Id. at 167-174). Plaintiff testified that he became disabled and stopped working in March 2006 due to pain in his left arm. (Tr. 24, 50). Plaintiff indicated that his worst problems are pain in his left arm and back, and that he

takes Darvocet M100 for the pain. (Id. at 24-25, 49). The record reflects that Plaintiff also takes Elavil at bedtime, prednisone, hydrocodone, and carisoprodol[2]. (Id. at 166, 224). Plaintiff also testified that he is being treated for depression, and that he does not have any side effects from his medication. (Id. at 26-27). In addition, Plaintiff testified that he injured his right foot in a motorcycle accident years earlier, and that he has sciatic nerve damage and Hepatitis B (Id. at 29, 49, 58). Plaintiff further testified that he lives with his 82 year old mother, whom he helps to care for. (Tr. 48). According to Plaintiff, he is able to vacuum, take out the trash, shop, shave, bathe and dress himself, do laundry and drive; however, it takes him longer to perform these tasks because he can only use his right hand. (Id. at 49, 161-63)[3].

---

[2] Carisoprodol, a muscle relaxant, is used with rest, physical therapy, and other measures to relax muscles and relieve pain and discomfort caused by strains, sprains, and other muscle injuries. See www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000717 (last visited November 1, 2010).

[3] In a subsequent physical activities questionnaire, Plaintiff asserts that he cannot perform any household chores other than cooking, and that while he is able to take showers and shave, he needs help getting dressed and washing his hair. (Tr. 200, 202, 205).

IV. **Analysis**

A. **Standard Of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[4] A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131

---

[4]This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

(11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. Lexis 10163 (S.D. Ala. 1999).

### B. __Discussion__

An individual who applies for Social Security disability benefits must prove his disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[5]

---

[5]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove (Continued)

In the case sub judice, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since his application date. (Tr. 14). The ALJ concluded that while Plaintiff has the severe impairments of depression, bilateral carpal tunnel syndrome, left radial mononeuropathy, cervical disease, sciatica, and Hepatitis B, they do not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (Id. at 14). The ALJ further found, based on the record evidence, that Plaintiff retains the residual functional capacity ("RFC") to:

> lift and carry up to 10 pounds frequently and 20 pounds occasionally with his right upper extremity and less than 1 pound frequently and 5 pounds occasionally with his left upper extremity; and stand and walk for 6 hours during an 8-hour workday; and sit for 6 hours during an 8-hour workday. The claimant is unable to engage in fine manipulation with the left upper extremity, and can engage in only occasional grasping with that hand; he can engage in frequent

---

at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

> grasping and fine manipulation with the
> right upper extremity; engage in occasional
> stooping, crawling, and climbing. Claimant
> is limited to understanding, remembering,
> and carrying out simple, one and two step
> tasks and instructions.

(Id. at 14). The ALJ next determined that Plaintiff has no past relevant work, but found, based on the testimony of the VE, that Plaintiff can perform other work existing in significant numbers in the national economy, namely the companion and children attendant jobs. Thus, he is not disabled. (Tr. 16-17).

The relevant evidence of record includes treatment records from the Stanton Road Clinic. On April 27, 2006, Plaintiff had a nerve conduction study, which found left radial mononeuropathy with lesion being distal to the innervations of the triceps muscle and mild to moderate carpal tunnel syndrome. (Id. at 246-254).

The record also reflects that Plaintiff has been treated by Timothy Peter Ahmadi, M.D. ("Dr. Ahmadi"), since at least 2003. (Id. at 275)  On December 12, 2008, Dr. Ahmadi completed a Food Stamp Program Request for Medical Information form for Plaintiff, wherein he opined that Plaintiff suffers from left radial neuropathy, and that Plaintiff is permanently unable to work. (Id. at 274)

Dr. Ahmadi completed a pain questionnaire dated January 12, 2009 (Tr. 275-276).  In the questionnaire, Dr. Ahmadi opined

that Plaintiff's pain will distract him from adequately performing daily activities or work, and that physical activity will greatly increase his pain and cause distraction from task or total abandonment of task. Dr. Ahmadi further opined that Plaintiff is totally restricted from work, that he is unable to use his upper extremity, and that Plaintiff's pain has been at the present level since 2006. (Id.)

Dr. Ahmadi's treatment notes dated January 26, 2009 reflect that Plaintiff continues to experience pain and discomfort on the left side, that he is unable to use his left hand adequately, and that other than the problem with the left hand, Plaintiff is medically stable. Dr. Ahmadi diagnosed Plaintiff with pain in the left wrist, back pain, left radial mononeuropthy, and mild to moderate carpal tunnel syndrome on the left side, and opined that Plaintiff could not engage in gainful employment due to limited education and the inability to use his left hand adequately. (Tr. 299).

Dr. Ahmadi also completed a Physical Capacities Evaluation form in which he opined that Plaintiff is unable to bend, reach, or squat, and is limited to 20 minutes of sitting in an 8 hour day. (Id. at 300). He also opined that Plaintiff can lift up to five pounds, carry up to ten pounds, and that he could not engage in simple grasping, fine manipulation, pushing or pulling with his left hand. (Id.)

Counselor John Marshall, III, MS, evaluated Plaintiff on January 12, 19, and 26, 2009. (Id. at 289). On January 19, 2009, Plaintiff was administered the Wechsler Adult Intelligence Scales – Third Edition to measure cognitive functioning. (Id. at 291). Assessment revealed that Plaintiff has a Full Scale IQ of 89, which is in the low average range when compared to his age peers. Plaintiff also showed a Verbal IQ of 91, which is in the average range, and a Performance IQ of 87, which is in the low average range. (Id. at 291). During the Assessment, Plaintiff was also given the Wide Range Achievement Test and the Minnesota Multiphasic Personality Inventory. According to Mr. Marshall, Plaintiff's scores would indicate a propensity toward diagnoses such as generalized anxiety disorder, histrionic personality disorder, or panic disorder. (Id. at 293).

Mr. Marshall opined that Plaintiff experiences moderate restrictions in his activities in day-to-day life, and that Plaintiff's ability to maintain consistent social functioning and his ability to complete tasks in a timely manner would be mildly to moderately limited due to his varying levels of pain. He also opined that Plaintiff's low average intellectual functioning would cause mild to moderate difficulty in remembering instructions, that Plaintiff might experience mild difficulties in performing simple tasks, and that Plaintiff would have a marked problem completing a normal day of work or

job related activities, especially on a full-time basis. (Id. at 294). Mr. Marshall opined that Plaintiff's assessment revealed a "Learning Disorder, Not Otherwise Specified." (Id.)

At the request of the Agency, Todd D. Elmore, M.D. ("Dr. Elmore") performed a consultative evaluation on May 4, 2009. The evaluation included an NCV and EMG. Dr. Elmore noted that Plaintiff's tests revealed mild bilateral carpal tunnel syndrome, and that the EMG of his left upper extremity was nearly normal but showed some decreased recruitment in his left brachioradialis, extensor digitorum, and triceps, which according to Dr. Elmore, could be due to radial nerve injury or poor effort. Dr. Elmore saw scant evidence of acute denervation or of any severe chronic denervation. Finally, Dr. diagnosed Plaintiff with bilateral carpal tunnel syndrome, left (nondominant) radial nerve palsy with good recovery and minimal sign of denervation on EMG, inconsistent left arm weakness, back pain, and cigarette smoking. Dr. Elmore opined that Plaintiff could work , particularly a sedentary job. (Id. at 335-340). He also completed a physical capacities evaluation wherein he opined that Plaintiff can frequently lift and carry up to 20 pounds, and that Plaintiff cannot use his left hand for fine manipulation. (Id. at 340).

The record reflects that on May 18, 2009, Plaintiff underwent a mental evaluation by John Davis, PhD ("Dr. Davis").

(Id. at 342-349). At the evaluation, Dr. Davis noted that there was nothing unusual about Plaintiff's gait, that Plaintiff denied any recent mental health treatment, and that Plaintiff reported that he repeated 3rd and 11th grades and was in learning disabled classes in school. (Id. at 345-46). Dr. Davis opined that Plaintiff was depressed and that Plaintiff's ability to function in an age appropriate manner, cognitively, communicatively, adaptively, behaviorally, and socially was mildly to moderately impaired. He also opined that Plaintiff's concentration, persistence and pace and his ability to carry out, understand, and remember instructions were likewise mildly to moderately impaired. (Id. at 349).

> **1.   Whether the ALJ erred in finding that Plaintiff can perform the jobs of companion and children's attendant because their descriptions in the Dictionary of Occupational Titles ("DOT") are at odds with Plaintiff's residual functional capacity ("RFC")?**

Plaintiff contends the two jobs identified by the VE and relied upon by the ALJ, namely companion and children's attendant, have reasoning levels that exceed his RFC. According to Plaintiff, his RFC limits him to carrying out simple one and two step tasks and instructions; however, the DOT places the reasoning component of the General Educational Development (GED)

level[6] for the companion position at a 3, and for the children's attendant position at a 2. Plaintiff also asserts that per the DOT, the caretaker/companion position requires frequent handling and fingering; however, his RFC restricts him from fingering with his left hand. Plaintiff thus contends that the VE's testimony was inconsistent with the DOT, and that the ALJ failed to resolve the conflict. Defendant counters that the ALJ did not err because the ALJ properly relied on the VE's explanation for any conflict. Specifically, Defendant argues that after the VE identified jobs that Plaintiff could perform, she testified that her testimony was consistent with the DOT; thus, the ALJ did not

---

[6]   The GED level  of a given job represents "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. . . . The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." See DOT Appendix C, 1991 WL 688702. GED reasoning level 2 signifies the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving few concrete variables in or from standardized situations." Id. GED reasoning level 3 signifies the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variable in or from standardized situations." Id. The Commissioner's rulings do not correlate GED levels with any particular skill level of work.

violate SSR 00-4p so long as the ALJ asked the VE to identify any inconsistencies.

Plaintiff's contention that the reasoning levels of the companion and children's attendant positions exceed his RFC is without merit. Several courts have concluded that jobs with a reasoning level of 2 are consistent with simple, unskilled work. For example, the court in Meissl v. Barnhart, 403 F. Supp.2d 981, 984-85 (C.D. Cal. 2005), reasoned as follows:

> The ALJ's limitation for the Plaintiff, with respect to an appropriate reasoning level, was that she could perform work which involved simple, routine, repetitive, concrete, tangible tasks. Therefore, the DOT's level two reasoning requirement did not conflict with the ALJ's prescribed limitation. Although the DOT definition does state that the job requires the understanding to carry out detailed instructions, it specifically caveats that the instructions would be uninvolved-that is, not a high level of reasoning.

403 F. Supp. 2d at 984-85 (quoting Flaherty v. Apfel, 182 F. Supp. 2d 824, 850 (D. Minn. 2001). *See also* Hackett v. Barnhart, 395 F. 3d 1168, 1176 (10th Cir. 2005)(holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to perform "simple and routine work tasks"); Money v. Barnhart, 91 Fed. Appx. 210, 215(3rd Cir. 2004)("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive."); Anderson v. Astrue, 2011 U.S. Dist. LEXIS 97440(S.D. Ala. Aug. 30, 2011)(no conflict between VE

testimony and DOT where at least one of the jobs identified by VE had reasoning level of 2, and the plaintiff was limited to simple routine tasks involving no more than simple, short instructions). In this case, Plaintiff has failed to establish a conflict with respect to the reasoning levels because the children's attendant position has a reasoning level of 2, which is consistent with carrying out simple, one and two step tasks and instructions.

Additionally, the undersigned finds that even assuming that a conflict existed between the VE's testimony and the DOT with respect to whether the companion position requires frequent handling and fingering, Plaintiff has not established that the ALJ erred with respect to Social Security Ruling 00-4p, 2000 SS R Lexis 8. That ruling provides, in relevant part, as follows:

> Occupational Evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearing level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

During the administrative hearing, the ALJ expressly asked the VE "Did you deviate in any way from the way [the children's

attendant and companion positions] are described in the [DOT},"
and the VE testified that she did not. (Tr. 33). In addition,
Plaintiff's counsel did not allege that there existed any
conflicts nor did she question the VE regarding any purported
conflicts.  Because no conflicts were identified, the ALJ was
not required under SSR 00-4p to elicit a reasonable explanation
from the VE as to any apparent conflicts, and did not err in
relying on the VE's testimony to conclude that Plaintiff is
capable of performing the positions. See Cammon v. Astrue, 2009
U.S. Dist. LEXIS 92293 (N.D. Ga. October 2, 2009)(the ALJ did
not err when she relied on the testimony of the VE where the ALJ
had no reason to believe that there was any conflict between the
VE testimony and the DOT and counsel did not question the VE
about any alleged conflict.); Bucholtz v. Barnhart, 98 Fed.
Appx. 540, 546 (7th Cir. 2004)(finding that "[a]though the []ALJ
has a duty to question a []VE about any inconsistencies with the
[]DOT and resolve that conflict before relying on the VE's
testimony, counsel has the responsibility for raising the issue
if the ALJ does not.").

     Assuming *arguendo* that a conflict does exist between the
VE's testimony and the DOT, in this Circuit, the VE's testimony
trumps the DOT. Following promulgation of SS Ruling 00-4p, a
panel of the Eleventh Circuit was presented with the question of
whether an ALJ erred when he relied on the testimony of a VE

without eliciting an explanation about an alleged "apparent
unresolved conflict" between the testimony of the VE and the DOT
as required by SS 00-4p. <u>Miller v. Commissioner</u>, 246 Fed. Appx.
660(11th Cir. 2007)(unpublished).  In rejecting the plaintiff's
claim, the panel held "[e]ven assuming that an inconsistency
existed between the testimony of the Vocational Expert and the
DOT, the ALJ did not err when, without first resolving the
alleged conflict, he relied on the testimony of the Vocational
expert.  Our precedent establishes that the testimony of a
vocational expert "trumps' an inconsistent provision of the DOT
in this circuit". <u>Id.</u>(quoting <u>Jones v. Apfel</u>, 190 F.3d 1224,
1229-30 (11th Cir. 1999); See also <u>Hurtado v. Comm'r of Soc.
Sec.</u>, 2011 U.S. App. LEXIS 8474 (11th Cir. 2011); <u>Jones v.
Comm'r of Soc. Sec.</u>, 2011 U.S. App. LEXIS 8146 (11th Cir.
2011)("The ALJ was permitted to base his findings about these
three jobs exclusively on the VE's testimony, irrespective of
any inconsistency with the DOT, and was not required to seek
further explanation.").  Accordingly, Plaintiff's claim must
fail.

> **2.   Whether the ALJ erred by not
> performing a "function by function"
> analysis of Plaintiff's limitations in
> violation of Social Security
> Ruling 96-8p?**

Plaintiff contends that the ALJ erred by not performing a
"function by function" analysis of his abilities and

17

limitations, specifically that the ALJ failed to discuss Plaintiff's ability to reach, push, or pull in light of the limitations to Plaintiff's left hand in violation of SSR 96-8p. Further, Plaintiff asserts that jobs in the light exertional category require reaching according to the DOT. The Commissioner responds that the RFC determined by the ALJ included requirements for lifting and carrying which arguably apply to Plaintiff's ability to push and pull. The Commissioner contends that the ALJ's RFC finding is supported by substantial evidence and that the ALJ provided a thorough statement of Plaintiff's functional abilities which satisfied the requirements of SSR 96-8p.

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. In Freeman v. Barnhart, 220 Fed. Appx. 957, 959-60 (11th Cir. 2007)(unpublished), the Eleventh Circuit held that an ALJ's failure to "more specific[ally] and explicit[ly]" set forth his findings with respect to a claimant's "functional limitations and work-related abilities on a function-by-function basis" is excusable where it is apparent the ALJ did "consider all of the evidence."; See also Chavez v. Astrue, 276 Fed. Appx. 627, 627-28 (9th Cir. 2008) ("Chavez claims that the ALJ committed legal error by determining his mental residual functional

capacity without performing a function-by-function assessment as required by Social Security Ruling 96-8p, 1996 SSR LEXIS 5. This claim fails because the ALJ considered and noted 'all of the relevant evidence' bearing on Chavez's 'ability to do work-related activities,' as required by the function-by-function analysis.") (internal citations omitted).

In this case, the ALJ set forth Plaintiff's RFC as the ability to:

> lift and carry up to 10 pounds frequently and 20 pounds occasionally with his right upper extremity and less than 1 pound frequently and 5 pounds occasionally with his left upper extremity; and stand and walk for 6 hours during an 8-hour workday; and sit for 6 hours during an 8-hour workday. The claimant is unable to engage in fine manipulation with the left upper extremity, and can engage in only occasional grasping with that hand; he can engage in frequent grasping and fine manipulation with the right upper extremity; engage in occasional stooping, crawling, and climbing. Claimant is limited to understanding, remembering, and carrying out simple, one and two step tasks and instructions.

(Tr. 14). In addition, the ALJ determined that Plaintiff could perform a full range of light work but noted, however, that Plaintiff's ability to perform all or substantially all of the requirements of that level of work was impeded by additional limitations. (Tr. 17). The ALJ summarized the evidence supporting such finding, including the medical evidence and Plaintiff's testimony regarding his daily activities. (Tr. 11-

19

14).  Based upon a review of the record, the undersigned finds
that substantial evidence supports the ALJ's RFC determination.
In reaching the RFC  determination, the ALJ properly and clearly
considered the record evidence regarding Plaintiff's functional
capabilities, including Plaintiff's own assertions and the
medical records, and so complied with SSR 96-8p, and discussed
Plaintiff's ability to lift, carry, stand, walk, and sit, as
well as the limitations in his ability to engage in fine
manipulation and grasping with his left hand. The fact that the
ALJ did not expressly address each functional ability, such as
the ability to reach, push or pull is of no moment where the
record clearly demonstrates that the ALJ considered all of the
evidence, and further establishes that Plaintiff has the RFC set
forth by the ALJ.

### 3.   Whether the ALJ erred by failing to assign controlling  weight to the opinions  of  Plaintiff's  treating physician?

Plaintiff contends that that the ALJ erred in not assigning
controlling weight to the opinions of Plaintiff's treating
physician, Dr. Ahmadi, which are contained in the pain
questionnaire. In the questionnaire, which was completed January
12, 2009 (Tr. 275-276), Dr. Ahmadi  opined that Plaintiff's left
carpal tunnel syndrome and left radial nerve neuropathy will
distract him from adequately performing daily activities or

work, that physical activity would increase his pain, and that his pain would cause him to be unable to perform at a productive level of work. Plaintiff submits that Dr. Ahmadi's opinions are not refuted by other record evidence and that Plaintiff's diagnoses are confirmed by Dr. Elmore. The Commissioner responds that the ALJ complied with Agency regulations and Eleventh Circuit law when he gave no weight to Dr. Ahmadi's opinions that Plaintiff was permanently unable to work as the opinions are conclusory and based on a visit made months earlier.

Circuit case law provides that "[t]he ALJ must generally give the opinion of a treating physician 'substantial or considerable weight' absent a showing of good cause not to do so." Newton v. Astrue, 297 Fed. Appx. 880, 883 (11th Cir. 2008). See also Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (a treating physician's opinion must be given substantial weight unless good cause is shown to the contrary). The Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion is not bolstered by the evidence, is contrary to the evidence, or when the treating physician's opinion is inconsistent with his or her own medical records. Phillips, 357 F.3d at 1240-41. If an ALJ elects to disregard the medical opinion of a treating physician, then he or she must clearly articulate the reasons for so doing. Id. The ALJ may also devalue the opinion of a treating physician where the

opinion is contradicted by objective medical evidence. Ellison v. Barnhart, 355 F.3d 1272, 1275-76 (11th Cir. 2003) (per curiam), citing Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (holding that "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion") (citation omitted); Kennedy v. Astrue, 2010 U.S. Dist. LEXIS 39492, *22-23 (S.D. Ala. Apr. 21, 2010) ("[I]t is the ALJ's duty, as finder of fact, to choose between conflicting evidence[,] and he may reject the opinion of any physician when the evidence supports a finding to the contrary.").

As noted above, the ALJ concluded that Plaintiff has the severe impairments of depression, bilateral carpal tunnel syndrome, left radial mononeuropathy, cervical disease, sciatica, and Hepatitis B. In doing so, however, the ALJ declined to assign any weight to the findings of Dr. Ahmadi in the pain questionnaire because he determined that they were "conclusory; internally inconsistent; at odds with the findings of Dr. Elmore and the findings and observations of Dr. Davis; inconsistent with the claimant's activities of daily living; and the treatment sought and received." (Tr. 15-16).

Based upon a careful review of the record, the undersigned finds that substantial evidence supports the ALJ's decision not to assign controlling weight to the opinions of Dr. Ahmadi. In this case, the ALJ reasonably discredited Dr. Ahmadi's opinions

after carefully examining the record as a whole. See Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (an ALJ is free to reject the opinion of any physician where the evidence supports a contrary conclusion).

A review of the record evidence reflects Dr. Ahmadi's treatment records, (Tr. 272-76, 299-300), provide scant evidence in support of his conclusion that Plaintiff is unable to work and reflect minimal objective findings. See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (treating physician's report can be discounted when it is unaccompanied "by objective medical evidence or wholly conclusory"); Choate v. Barnhart, 457 F.3d 865, 870 (8th Cir. 2006) (ALJ permitted to disregard a treating physician's opinion regarding limitations, when no limitations were stated in the physician's treatment notes).  Moreover, the record reflects that a mere 5 days before Dr. Ahmadi completed the pain questionnaire which contains extreme pain limitations, Plaintiff was treated at Springhill Medical Center on January 7, 2009. While Plaintiff reported that he had been experiencing back and leg pain for two weeks, he did not report any pain in his left upper extremity. Plaintiff was diagnosed with sciatica, and upon discharge, it was noted that "Patient is pain free."  (Tr. 278-88).

In addition, Dr. Elmore examined Plaintiff and conducted an NCV and EMG on him. (Tr. 334-340). Dr. Elmore noted that he saw

23

little evidence of acute denervation or of any severe chronic denervation, and noted that mostly, Plaintiff had good motor units throughout. Dr. Elmore diagnosed Plaintiff with mild bilateral carpal tunnel syndrome and left (nondominant) radial nerve palsy, and observed that Plaintiff was "in no acute distress" and that his gait and station were normal. (Id. at 335). Dr. Elmore opined that Plaintiff could work, particularly a sedentary job, that he probably has some dexterity issues with his left hand, and that Plaintiff could not use his left hand for repetitive action such as fine manipulation. (Id. at 340).

Plaintiff was also evaluated by Dr. Davis who diagnosed him with depression and opined that his mental condition will likely improve or deteriorate in correlation with his general medical condition. He further found that Plaintiff's mental capacity should be considered as an add-on factor but is not in and of itself disabling. (Id. at 349). Dr. Davis also observed that there was "nothing unusual about [Plaintiff's] gait [or] posture...." (Id. at 345); see also (Id. at 346). Additionally, as noted supra, Plaintiff reported that he is able to vacuum, take out the trash, shop, shave, bathe and dress himself, do laundry and drive; however, it takes him longer to perform these tasks because he can only use his right hand. (Id. at 49, 161-63).

Accordingly, based on the record evidence, the undersigned finds that the ALJ set forth good cause for rejecting the extreme pain limitations set forth in the pain questionnaire completed by Dr. Ahmadi, and that substantial evidence, including the medical records and Plaintiff's report of his daily activities, supports the ALJ's finding that Plaintiff is not disabled.

## V.   Conclusion

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits and supplemental security income, be **AFFIRMED.**

**DONE** this the **29th** day of **September, 2011.**

_____**/s/ SONJA F. BIVINS**_____
**UNITED STATES MAGISTRATE JUDGE**